UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN SUE BIGFORD,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Hala Y. Jarbou

Case No. 1:23-cv-585

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on May 12, 2020, alleging that she became disabled as of February 15, 2020, due to generalized anxiety disorder, osteoarthritis of the shoulders and legs, major depressive disorder, and problems with her hands and feet. (PageID.79, 222–27.) Plaintiff was age 55 at the time of her alleged onset date and when she filed her application.

(PageID.79.) She had a high school degree and past work as a power press tender and a general laborer. (PageID.42, 254.) Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

On April 18, 2022, ALJ Cynthia S. Harmon held a hearing by telephone and received testimony from Plaintiff and John Stokes, an impartial vocational expert (VE). (PageID.50–76.) On May 5, 2022, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.29–44.) The Appeals Council denied Plaintiff's request for review on April 24, 2023. (PageID.15–19.) The ALJ's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on June 6, 2023.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2025, and had not engaged in substantial gainful activity since her alleged onset date of February 15, 2020, the ALJ found that Plaintiff suffered from severe impairments of arthritis of the left shoulder; trigger finger of the right middle and ring fingers; spurring of the left hip joint; and obesity. (PageID.31.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any physical or mental impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.35–36.)

---

must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ found that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), except:

> [T]he claimant can only occasionally reach overhead with her left upper extremity, and she can only frequently, as opposed to continuously, handle and finger with her right upper extremity. Additionally, the claimant can only frequently stoop, crouch, kneel, and crawl, and she can only occasionally climb ramps and stairs.

(PageID.36.)

At step four, the ALJ determined that Plaintiff retained the ability to perform her past relevant work as a power press tender and a general laborer, as generally and actually performed. (PageID.42.) Nonetheless, the ALJ found, in the alternative, that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of industrial cleaner, cook helper, and hospital cleaner, approximately 780,000 of which existed in the national economy. (PageID.46.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Therefore, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff raises one issue in her appeal: the ALJ legally erred by failing adequately to articulate her evaluation of the supportability and consistency of the medical opinion evidence in accordance with 20 C.F.R. § 404.1520c and the law of this circuit. (ECF No. 9 at PageID.548.)

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent

work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3).

As part of her RFC finding, the ALJ evaluated the opinion evidence pursuant to 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.l520c(b)(2) and (3).

"[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021); *see* 20 C.F.R. § 404.1520c(1)–(2); *Conklin v. Kijakazi*, No. 21-CV-8486, 2023 WL 104829, at *12–13 (S.D.N.Y. Jan. 5, 2023) (stating that "supportability" "has to do with the fit between the medical opinion

offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion," and "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them" (internal quotation marks omitted)). In evaluating an opinion, "an ALJ need not use the precise words 'supportability' or 'consistency,' so long as he or she has explained how those two 'most important' factors were considered in determining the persuasiveness of each opinion." *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-188, 2023 WL 8614065, at *5 (S.D. Ohio Dec. 13, 2023) (quoting 20 C.F. R. § 404.1520c(b)(2)).

The record contained three opinions addressing Plaintiff's physical limitations. The specific limitations at issue in this appeal are those for lifting and carrying, which dictate whether Plaintiff is limited to performing light work, thus rendering her disabled under the Agency's regulations, *see* 20 C.F.R. pt. 404, subpt. P, App. 2, or medium work, which would not render her disabled. Three medical sources, Uchebike Nwankwo, M.D., Francis Grubelich, M.D., and Saadat Abbasi, M.D., opined that Plaintiff could lift and carry 10 pounds frequently and up to 20 pounds occasionally (PageID.88–89, 116, 432–33), while one, Howard D. Bronstein, M.D., opined that she could lift and carry 25 pounds frequently and 50 pounds occasionally. (PageID.467.)

Dr. Nwankwo performed a physical consultative examination in December 2020. The ALJ assessed Dr. Nwankwo's opinion as follows:

> I find Dr. Nwankwo's opinion unpersuasive because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living, as detailed above. Indeed, Dr. Nwankwo's opinion is also inconsistent with his own evaluation report, which does not contain sufficient clinical examination findings to provide a corroborative basis for the exertional and postural limitations he proposed. As such, it appears that Dr. Nwankwo may have relied quite heavily on the

7

> claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported in formulating his opinion. I also stress that Dr. Nwankwo provided his opinion after a single evaluation approximately 1 ½ years ago, and he did not have an opportunity to review the current and more fully developed record of evidence, which suggests a greater degree of physical functional capability.

(PageID.41.)

Dr. Grubelich, a State agency medical consultant, reviewed the record in January 2021. Upon reconsideration in November 2021, Dr. Abbasi agreed with Dr. Grubelich's opinion. The ALJ assessed the opinion as follows:

> I find the opinion of Dr. Grubelich and Dr. Abbasi unpersuasive because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, the claimant's reported activities of daily living, and Dr. Bronstein's subsequent opinion, as discussed above, which do not suggest that the claimant would have such significant limitations in lifting and carrying. Indeed, Dr. Grubelich and Dr. Abbasi each provided this opinion at least 6 months ago and did not have an opportunity to review the current and more fully developed record of evidence.

(PageID.41–42.)

Finally, Dr. Bronstein, a State agency medical consultant, reviewed the record on reconsideration in December 2021. The ALJ assessed this opinion as follows:

> I find Dr. Bronstein's opinion partially persuasive because his proposed exertional, manipulative, and postural limitations are generally consistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living, as noted above. Additionally, Dr. Bronstein is an experienced medical consultant who has acquired expertise in evaluating claimants' impairments under the Social Security Act and Regulations. In not finding Dr. Bronstein's opinion more persuasive, I note that he provided it approximately 5 months ago and did not have an opportunity to review the current and more fully developed record of evidence, which provides a basis for finding additional manipulative limitations pertaining to the claimant's right upper extremity to address her right trigger fingers, as well additional restrictions in the claimant's ability to climb ramps and stairs given her reports of persistent symptoms of lower extremity pain.

(PageID.40.) The ALJ adopted Dr. Bronstein's opinion as to carrying and lifting restrictions to support his RFC for medium work.

Plaintiff contends that the ALJ failed to properly analyze the opinion evidence in accordance with the regulation. First, she argues that the ALJ failed to articulate her consideration of the consistency factor for the opinions she found unpersuasive. She contends that the ALJ's finding that the opinions were "inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living," is simply a conclusion that fails adequately to explain how the ALJ found the opinions inconsistent with the identified categories of evidence. (ECF No. 9 at PageID.554–55.)

While the ALJ did not cite specific evidence she found inconsistent with Dr. Nwankwo's and Drs. Grubelich and Abbasi's opinions in the same paragraphs discussing their persuasiveness, she referenced the evidence "discussed above." (PageID.41–42.) This was consistent with Sixth Circuit law. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Earlier in her decision, the ALJ discussed the rather sparse medical record, finding it, on the whole, inconsistent with disabling impairments. For example, regarding Plaintiff's treatment, the ALJ cited "relatively infrequent medical appointments" and "significant gaps" in Plaintiff's treatment history. Plaintiff saw Michael Vaccareillo, M.D., in early January 2020 for further evaluation of her trigger fingers. The doctor administered a flexor tendon sheath steroid in Plaintiff's right ring finger. (PageID.378–83.) The ALJ noted that Plaintiff apparently did not

9

return to Dr. Vaccareillo after receiving the injection, nor did she seek treatment for *any* of her reported symptoms until more than one and a half years later when she saw her new primary care provider, Alifa Mohamed, M.D., in July 2021 for joint pain. (PageID.37, 443.) Plaintiff returned to Dr. Mohamed in August 2021 for chronic bilateral ankle pain (PageID.441–42), but she sought no further treatment for any of her symptoms thereafter. (PageID.38.)  The ALJ also noted that Plaintiff had not taken any prescription-strength medicine for her symptoms during the relevant period. Instead, she took only over-the-counter medication. (PageID.38–39.) Regarding clinical examination findings, the ALJ noted that Plaintiff's treating and examining providers reported generally normal and unremarkable findings. (PageID.39.) In addition, the only objective medical study produced during the relevant period—a consultative x-ray of Plaintiff's left hip—showed only mild degenerative joint disease. (PageID.38–39.) As the ALJ noted, this evidence suggested that Plaintiff's impairments were not as limiting as she alleged. Thus, when the decision is considered as a whole, the ALJ's reasoning is sufficient to permit review. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review.").

Plaintiff also argues that the ALJ failed to articulate her consideration of the supportability factor. (ECF No. 9 at PageID.556.) This argument lacks merit. First, as to Dr. Nwankwo's opinion, while the ALJ found his opinion "inconsistent . . . with his own evaluation report" (PageID.41), this reference actually pertained to supportability, as it dealt with Dr. Nwankwo's own findings (or lack thereof) to support his exertional and postural limitations. As for the prior administrative findings of Dr. Bronstein and Drs. Grubelich and Abbasi, while the ALJ the did not specifically reference supportability when discussing persuasiveness, her

10

consideration of that factor is evident from her decision. As one district court has observed, the bases of an opinion's supportability and consistency "may necessarily overlap" because "the opinion's support will typically come from other evidence in the record." *Guthrie v. Comm'r of Soc. Sec.*, No. 3:22-CV-1309, 2023 WL 6258259, at *3 (N.D. Ohio Sept. 26, 2023). Thus, an ALJ adequately addresses supportability by "reviewing in detail the evidence which the state agency [reviewers] relied upon to form their opinions . . . ." *Id.* As set forth above, the ALJ fully reviewed the evidence that Drs. Bronstein, Grubelich, and Abbasi relied on to form their opinions regarding Plaintiff's physical limitations. Thus, the ALJ adequately addressed the supportability of those opinions.

Plaintiff also takes specific issue with the ALJ's evaluation of the supportability of Dr. Nwankwo's opined limitations. (ECF No. 9 at PageID.556–57.) The ALJ found that the evaluation report lacked "sufficient clinical examination findings to provide a corroborative basis for the exertional and postural limitations he proposed." (PageID.41.) Dr. Nwankwo's findings included normal gait, good posture, normal strength and range of motion (except for slightly reduced left shoulder range of motion), intact sensation, ability to grip with both hands, make fists, and pick up objects. (PageID.32, 431.) Although Plaintiff contends that the ALJ ignored Dr. Nwankwo's citation to specific impairments for each limitation, the ALJ properly found that Dr. Nwankwo's mostly normal clinical findings did not support the degree of exertional and postural limitation he opined. Plaintiff further contends that the ALJ's conclusion that Dr. Nwankwo "may have relied quite heavily" on Plaintiff's subjective report of her symptoms and limitations in formulating his opinioned limitations was simply speculation. However, given the paucity of supporting objective findings, the ALJ reasonably concluded that Plaintiff's subjective complaints may have influenced Dr. Nwankwo's opinion. *See Owens v. Comm'r of Soc. Sec.*,

No. 3:20-CV-1737, 2021 WL 8342841, at *6 (N.D. Ohio Sept. 15, 2021), *report and recommendation adopted*, 2023 WL 6283030 (N.D. Ohio Sept. 27, 2023) ("The ALJ was entitled to discredit Dr. Onamusi's opinion for relying on such complaints as long as he explained his finding—which he specifically did. As such, the ALJ satisfied his requirement of discussing the supportability of Dr. Onamusi's opinion.").

Plaintiff further contends that, in assessing consistency, the ALJ failed to consider that Dr. Nwankwo's findings were "remarkably similar" to observations of psychological consultants Neil Reilly, M.A., and James Lozer, Ed. D, that Plaintiff "moved slowly and walked carefully" and that her motor behavior was reduced as to her endurance on her feet. She further argues that, while the ALJ found that the opinions of Drs. Grubelich and Abbasi were undermined by their inconsistency with Dr. Bronstein's opinion, the ALJ failed to consider or discuss that the opinions of Drs. Grubelich and Abbasi were consistent with one another, as well as with that of Dr. Nwankwo. (ECF No. 9 at PageID.557–58.)

Regarding the psychological consultants' observations, because their examination did not pertain to Plaintiff's physical work-related activities, the ALJ would not have necessarily considered them pertinent to her physical RFC determination. And on the other side of the scale, the consultants observed that Plaintiff's posture, speed, and gait were within normal limits, that her strength and range of motion was adequate, and that her daily activities included doing all of the shopping and cooking for the family, all of which was consistent with the ALJ's finding that Plaintiff could perform a limited range of medium work. (PageID.419.) Thus, the ALJ did not err in this regard.

As for the opinions of Drs. Nwankwo, Grubelich, and Abbassi, while the ALJ did not expressly acknowledge their consistency, her discussion of the opinion evidence adequately

12

demonstrates that she recognized they were consistent with each other in finding that Plaintiff was limited to light work and inconsistent with Dr. Bronstein's opinion that Plaintiff retained the physical ability to perform medium work. While Plaintiff suggests that the ALJ should have adopted the consistent opinions and rejected the "clear outlier," (ECF No. 9 at PageID.558), the ALJ chose to resolve the inconsistency, as she was permitted to do, by evaluating the opinions against the record as a whole and in light of the pertinent regulatory factors. *See* 20 C.F.R. § 404.1529(c); SSR 96-8p, 1996 WL 374184, at *7 (stating that the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, . . . explain why the opinion was not adopted"). Because the ALJ's findings are supported by substantial evidence, Plaintiff's argument amounts to a request that the Court reweigh the evidence, which the Court may not do. *See, e.g., Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that the court "reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

Finally, Plaintiff notes that the ALJ found, inaccurately, that some of the opinions failed to consider "the current and more fully developed record of evidence." (PageID.40–42.) This statement was accurate as to both Dr. Nwankwo's and Dr. Grubelich's opinions. As Plaintiff notes, however, the ALJ got it wrong with regard to Dr. Bronstein's and Dr. Abbasi's opinions. No further evidence was received after August 2021, and both opinions were issued several months later. Nonetheless, Plaintiff fails to demonstrate error warranting remand. Both of the

13

doctors had reviewed all of the medical evidence and reached different conclusions. The ALJ considered the same evidence, weighed it, and resolved the conflict. Nothing suggests that the ALJ would weigh the evidence differently on remand to correct these misstatements. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("We are not required to remand where to do so would be an idle and useless formality.") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: April 2, 2024                              /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).